UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LEI YANG, and<br>YING TIAN,<br>*on their own behalf and on behalf of others similarly situated*<br>Plaintiffs,<br><br>VS.<br><br>CHI FAMILY LLC<br>d/b/a New Kim Lai Chinese Restaurant<br>GUI XIAN CHI<br>a/k/a Guixian Chi;<br>XUEWEN CHI<br>a/k/a Xue Wen Chi<br>a/k/a Sean Chi<br>LAI YU WONG<br>a/k/a Laiyu Wong<br>Defendants. | Case No.: 23-cv-00323 |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND INCORPORATED MEMORANDUM OF LAW**

NOW COME Plaintiffs, LEI YANG and YING TIAN and Defendants, CHI FAMILY LLC d/b/a New Kim Lai Chinese Restaurant; GUI XIAN CHI a/k/a Guixian Chi; XUEWEN CHI a/k/a Xue Wen Chi a/k/a Sean Chi; LAI YU WONG a/k/a Laiyu Wong and jointly and respectfully request that this Court enter an Order approving the Parties' Settlement Agreement (hereinafter "Settlement Agreement").

**I. Background**

Defendants CHI FAMILY LLC d/b/a New Kim Lai Chinese Restaurant; GUI XIAN CHI a/k/a Guixian Chi; XUEWEN CHI a/k/a Xue Wen Chi a/k/a Sean Chi; LAI YU WONG a/k/a Laiyu Wong operated a Chinese restaurant doing business as "Kim Lai Chinese Restaurant"

located on Lafayette Road in Portsmouth. Plaintiffs YANG and TIAN were employed at Kim Lai Chinese Restaurant as a delivery driver and packer, respectively. They filed this lawsuit alleging the Defendants have failed to properly compensate for hours worked in excess of forty as required by the FLSA and NH Rev Stat. §279 *et seq.* to recover allegedly unpaid wages, allegedly unpaid overtime premium pay, liquidated damages, attorney fees, and costs. Defendants denied Plaintiffs' allegations and claimed they had been paid for all hours worked.

The Parties have evaluated their respective positions and the significant time and expense of continued litigation. While the Plaintiffs believe that the FLSA and NH Rev Stat. claims they have asserted in this litigation have merit, Defendants steadfastly deny such claims and have asserted a number of defenses to the claims. All Parties, however, wish to avoid the considerable uncertainty and risks of litigation, as well as the expense and length of continued proceedings necessary to prosecute and defend this matter. The Settlement Agreement presented to the Court were the product of arms-length negotiations among experienced counsel. It provides substantial relief to Plaintiffs and it eliminates the risks both sides would bear if litigation of the FLSA claims continued to resolution on the merits. The settlement is fair and reasonable, and, consequently, the Court should approve it.

## II. Legal Analysis

### A. Approval of the Terms of the Settlement

Pursuant to the FLSA, claims for back wages and other damages arising under the FLSA may only be settled or compromised with the approval of the district court or the Secretary of Labor. *See Brooklvn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *D.A. Schulte, Inc. v.Gangi*, 328 U.S. 108 (1946); *see also Lvnn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (1lth Cir. 1982) (claims for back wages arising under the FLSA may be settled or compromised only with

the approval of the Court or the Secretary of Labor). Section 216(b) of the FLSA requires parties seeking to settle and release FLSA claims to present the district court with a proposed settlement. When parties bring a proposed settlement of an FLSA claim before a court, the court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a bona fide dispute. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982); *Jarrard v. Se. Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). If a settlement in an FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.,* 679 F.2d at 1354.

If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In determining whether the settlement is fair and reasonable, the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See Leverso v. South Trust Bank of Ala., Nat. Assoc.,* 18 F.3d 1527. 1531 n.6 (1lth Cir. 1994). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

Public policy favors settlements. This is particularly true in complex cases where substantial resources can be conserved by avoiding the time, cost and rigor of protracted

litigation. *See id*. at 1354; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) ("[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.") (internal citation omitted).

**B. The Settlement is Fair, Just, and Reasonable**

In determining whether to approve a settlement as being fair, just and reasonable, the Court must consider whether the proposed Agreement was fairly and honestly negotiated; whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and the judgment of the Parties that the settlement is fair and reasonable. *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

In the instant case, it is clear that the proposed settlement is fair, just and reasonable.

First, the Settlement Agreement is reached after substantial arms-length negotiations, as well as substantial written communications among counsel. The matter was vigorously contested, with counsel for all Parties ardently advocating their positions. In the end, experienced counsel on both sides of this matter deemed the settlement fair and reasonable. As such, courts generally do not second-guess the parties, or substitute their judgment for that of the proponents of the settlement, particularly when experienced counsel familiar with the litigation have reached an arms-length settlement. *See Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 474 (S.D.N.Y. 1979). "Although the Court is not bound by counsel's opinion, their opinion nevertheless is entitled to great weight." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002).

Plaintiff's Counsel argues damages as follows:

**1. Plaintiff LEI YANG**

Plaintiff Lei Yang claims that from on or around November 15, 2019 to February 22, 2023, his regular work schedule ran from 10:50 to 22:00 for eleven hours and ten minutes (11.10) per day for six (6) days per week, additionally plaintiff Lei Yang claims that had to stay an extra forty-five (45) minuets for two (2) days per week meaning he worked an additional one and a half (1.5) hours meaning that plaintiff Lei Yang claims to have worked a total of sixty-eight and a half (68.5) hours per week. Plaintiff Lei Yang claims he did not have a fixed time for lunch or for dinner. Although he had two meals he claims he was on call during that time.

From on or around November 15, 2019, to February 22, 2023, plaintiff Lei Yang claims he was paid a flat compensation at a rate of one thousand dollars ($1,000) per month. Despite being in a tipped role, Plaintiff Lei Yang claims that he did not ever receive any tips from patrons. Plaintiff Lei Yang argues that during his employment, he was paid in two checks per month for his services that he provided to the defendants.

Plaintiff Lei Yang claims that he was not paid overtime pay for overtime work. Throughout his employment, plaintiff Lei Yang claims that he was not compensated at least one and one half his promised hourly wage for all hours worked above forty (40) in each workweek.

Plaintiff's counsel has argued in this matter that Plaintiff LEI YANG's compensatory damages under the Fair Labor Standards Act are $25,182.78 and liquidated damages are $25,182.78. Plaintiff's counsel has argued that damages under the New Hampshire Minimum Wage Law is $25,182.78. Thus, Plaintiff's counsel avers that Plaintiff LEI YANG's shortfall with liquidated damages is $50,365.56.

**2. Plaintiff YING TIAN**

Plaintiff Ying Tian alleges that from on or around December 8, 2021 to February 22, 2023, her regular work schedule ran from 10:50 to 22:00 for eleven hours and ten minutes (11.10) per day for six (6) days per week for a total of sixty-seven (67) hours per week.

Plaintiff Ying Tian claims that she did not have a fixed time for lunch or for dinner.

Plaintiff Ying Tian alleges that from on or around December 8, 2021, to on or around May 31, 2022, she was paid a flat compensation at a rate of two thousand eight hundred dollars ($2,800) per month. Plaintiff Ying Tian alleges that from on or around June 01, 2022, to on or around November 30, 2022, she was paid a flat compensation at a rate of two thousand none hundred dollars ($2,900) per month. Plaintiff Ying Tian alleges that from on or around December 1, 2022 to February 22, 2023, she was paid a flat compensation at a rate of three thousand two hundred dollars ($3,200) per month. Plaintiff Ying Tian claims that she did not ever receive a single tip.

Plaintiff's counsel argues that Plaintiff YING TIAN's compensatory damages under the Fair Labor Standards Act are $44,363.59 and liquidated damages are $44,363.59. Plaintiff's counsel argues that Plaintiff's damages under the New Hampshire Minimum Wage Law are $44,363.59. Thus, Plaintiff's counsel argues that Plaintiff YING TIAN's shortfall with liquidated damages is $50,365.56.

Based on Plaintiff's demand for damages as well as the time, expense, and risk of continued litigation , the amount of One Hundred Fifteen Thousand Dollars ($115,000.00) (inclusive of Plaintiffs' legal fees) is fair and the proposed settlement agreement should be approved. This settlement was the result of a contested litigation and arm's-length bargaining between experienced counsels, and guidance of this Court.

Second, as with any FLSA action, questions of fact and law exist which place the ultimate outcome of the litigation in doubt. The parties do not dispute that Plaintiffs have worked as employees for Defendants. Questions exist chiefly with regard to the number of hours worked by the Plaintiffs, whether any overtime hours went unpaid and the amount thereof.

Litigation would have involved proceeding through depositions, further written discovery, summary judgment and going forward for trial if the motion for summary judgment is denied.

Third, the Parties agree that the settlement is fair and reasonable and takes into account Plaintiffs' allegations regarding unpaid overtime compensation. As specifically provided in the Agreements, Plaintiffs agree to settle, *inter alia*, their wage and hour claims in full settlement of all FLSA claims asserted or which could have been asserted against Defendants, which has been apportioned at Plainitff's discretion, between wages and liquidated damages and also includes counsel fees and costs, in addition to any claims that may have arisen during the course of his employment. Given the financial terms of the settlement, it is highly unlikely that the recovery for Plaintiffs would increase as a result of protracted litigation. "As courts have recognized, when considering settlement agreements they[] should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *In re BankAmerica*, 210 F.R.D. at 701 (internal quotations and citation omitted).

Lastly, there is no evidence, or even claim, of fraud or collusion. To the contrary, the settlement was reached after some vigorous initial litigation, , and substantial arms-length negotiations. Where there is no evidence of fraud or collusion, courts presume that no such improprieties tainted the negotiations. *Priddy v. Edelman,* 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Cont'l Illinois Nat'l Bank and Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987).

## III. Conclusion

For the foregoing reasons, the Parties request that the Court grant their motion and enter an Order approving the Settlement Agreement.

## IV. Memo Statement LR 7.1(a)(2)

No memorandum of law accompanies this Motion. To the extent it relies on legal authority, it is cited herein.

TROY LAW, PLLC
*Attorneys for the Plaintiffs*

By: *<u>/s/ Tiffany Troy</u>*
Tiffany Troy
41-25 Kissena Blvd., Suite 110
Flushing, NY 11355
Tel: 718 762 1324

Primmer Piper Eggleston & Cramer
*Attorneys for Defendants*

By: */s/* Ryan P. McClure
Ryan P. McClure, Esq.
900 Elm Street, 19th Floor
P.O. Box 3600
Manchester, NH 03105
Tel: (603) 626-3226

**CERTIFICATION**

I, Tiffany Troy, hereby certify that on January 27, 2025, I served the foregoing by causing a true and correct copy of the same to be sent by operation of the Court's ECF System to the following:

Ryan P. McClure, Esq.
900 Elm Street, 19th Floor
P.O. Box 3600
Manchester, NH 03105

*/s/ Tiffany Troy*